# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP740-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |         Plaintiff-Respondent, |
| |     v. |
| | DeAnthony K. Muldrow, |
| |         Defendant-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF
Reported at 377 Wis. 2d 223, 900 N.W.2d 859
PDC No:  2017 WI App 47 - Published

| | |
|---|---|
| OPINION FILED: | May 18, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 21, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Manitowoc |
|   JUDGE: | Jerome L. Fox |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs filed by and an oral argument by *Leonard Kachinsky* and *Kachinsky Law Offices*, Neenah.

For the plaintiff-respondent, there was a brief filed by *Tiffany M. Winter*, assistant attorney general, and *Brad D. Schimel*, attorney general.  There was an oral argument by *Tiffany M. Winter.*

2018 WI 52

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.    2016AP740-CR
(L.C. No.   2009CF334)

STATE OF WISCONSIN                    :          IN SUPREME COURT

**State of Wisconsin,**

    **Plaintiff-Respondent,**

    **v.**

**DeAnthony K. Muldrow,**

    **Defendant-Appellant-Petitioner.**

**FILED**

**MAY 18, 2018**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals.  *Affirmed.*

¶1    MICHAEL  J.  GABLEMAN,  J.    A defendant who enters a guilty plea waives numerous constitutional rights.  State v. Bangert, 131 Wis. 2d 246, 270, 389 N.W.2d 12 (1986). Accordingly, "[u]nder the Due Process Clause of the Fourteenth Amendment to the United States Constitution,[1] a defendant's

---

[1] The Due Process Clause of the Fourteenth Amendment to the United States Constitution states "[n]o State shall . . . deprive any person of life, liberty, or property[] without due process of law . . . ."  U.S. Const. amend. XIV, § 1.

guilty plea must be" entered in a knowing, voluntary, and intelligent fashion. State v. Cross, 2010 WI 70, ¶16, 326 Wis. 2d 492, 786 N.W.2d 64. This means, inter alia, the circuit court must notify the defendant of any direct consequence of his guilty plea. Brady v. United States, 397 U.S. 742, 755 (1970). A direct consequence of a guilty plea is one that "has a definite, immediate, and largely automatic effect on the range of a defendant's punishment." State v. Bollig, 2000 WI 6, ¶16, 232 Wis. 2d 561, 605 N.W.2d 199. We have identified direct consequences of a plea as being those that impose punishment. Id., ¶17.

¶2 The legislature has codified this prerequisite, requiring circuit courts to "[a]ddress the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted" before the court accepts a guilty plea. Wis. Stat. § 971.08(1)(a) (2015-16).[2] A defendant who is not accurately informed of the punishment that could result from his guilty plea may be entitled to withdraw that plea. State v. Taylor, 2013 WI 34, ¶32, 347 Wis. 2d 30, 829 N.W.2d 482.

¶3 Petitioner DeAnthony K. Muldrow pled guilty to second-degree sexual assault contrary to Wis. Stat. § 948.02(2). This conviction subjects Muldrow to (as is relevant here) lifetime

---

[2] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

2

GPS tracking pursuant to Wis. Stat. § 301.48.[3]  Muldrow moved to withdraw his guilty plea on the grounds that his plea was not knowing[4] because he was never informed that lifetime GPS tracking is a consequence of a conviction for second-degree sexual assault.

¶4  The parties agree that the circuit court failed to inform Muldrow that his guilty plea would subject him to lifetime GPS tracking.  The issue in this case is whether lifetime GPS tracking is a "punishment" such that due process requires a defendant be informed of it before entering a plea of guilty.  The Manitowoc County Circuit Court[5] concluded that lifetime GPS tracking is not punishment, and so denied Muldrow's motion to withdraw his plea.  The court of appeals affirmed. State v. Muldrow, 2017 WI App 47, ¶1, 377 Wis. 2d 223, 900 N.W.2d 859.

---

[3] Lifetime GPS tracking applies after an offender has completed all sentences and any periods of probationary supervision.  See Wis. Stat. §§ 301.48(2)(a)3-3m.  It should be noted that an offender may be subject to GPS tracking during extended supervision and probation pursuant to other statutory provisions.  See, e.g., Wis. Stat. §§ 973.01(5), (9); see also Wis. Stat. § 301.48(2)(a)1m.  These, however, are not at issue in the present case, as Muldrow challenges only lifetime GPS tracking pursuant to § 301.48(2)(a)3-3m. and does not challenge GPS tracking during extended supervision or probation.

[4] Muldrow did not specify in his motion to withdraw his plea in the circuit court whether his plea was not knowing, voluntary, or intelligent——or some combination thereof.  Before this court, Muldrow argues only that his plea was not knowing.

[5] Honorable Jerome L. Fox, presiding.

¶5 This case presents us with an opportunity to set forth the proper test for determining whether a sanction[6] is "punishment" such that due process requires a defendant be informed of it before entering a plea of guilty. We must first, therefore, determine what that test is.

¶6 We hold that the intent-effects test is the proper test used to determine whether a sanction is punishment such that due process requires a defendant be informed of it before entering a plea of guilty.

¶7 After determining the proper test for whether a sanction is punishment such that due process requires a defendant be informed of it before entering a plea of guilty, we must apply that test to the facts of Muldrow's case.

¶8 Applying the intent-effects test, we hold that neither the intent nor effect of lifetime GPS tracking is punitive. Consequently, Muldrow is not entitled to withdraw his plea because the circuit court was not required to inform him that his guilty plea would subject him to lifetime GPS tracking. Accordingly, we affirm.

---

[6] Though the colloquial definitions of "sanction" and "punishment" may be similar, courts routinely use "sanction" as a general term for a negative consequence that may or may not rise to the level of "punishment." See, e.g., Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168 (1963); Turner v. Glickman, 207 F.3d 419, 430 (7th Cir. 2000); State v. Rachel, 2002 WI 81, ¶42, 254 Wis. 2d 215, 647 N.W.2d 762.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Muldrow's Plea

¶9    In 2009, the State charged Muldrow with five counts of criminal conduct as a consequence of an incident in which he had forcible intercourse with a 15-year-old girl.  He reached a plea agreement with the State whereby he agreed to plead guilty to the first two counts:  second-degree sexual assault of a child contrary to Wis. Stat. § 948.02(2)[7] ("count one"), and third-degree sexual assault contrary to Wis. Stat. § 940.225(3)[8] ("count two").  In exchange, the State agreed to dismiss, but read into the record for purposes of sentencing, the remaining three counts.    Further, Muldrow and the State jointly recommended the following sentence:    an 18-year deferred judgment agreement ("DJA") on count one, and one year initial confinement followed by one year of extended supervision on count two.  If Muldrow complied with the terms of the DJA, count one would be dismissed.[9]  Because of other sentences not relevant

---

[7] "Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 16 years is guilty of a Class C felony."  Wis. Stat. § 948.02(2).

[8] "Whoever has sexual intercourse with a person without the consent of that person is guilty of a Class G felony."  Wis. Stat. § 940.225(3).

[9] The conditions of the DJA included:  no new violations of the criminal law, no contact with the victim, compliance with the Wisconsin sex offender registry, no sexual contact or intercourse with anyone under the age of 18, and compliance with all conditions of extended supervision.

5

here, Muldrow would be under Department of Corrections ("DOC") supervision for the first 12.5 years of the DJA.

¶10 The State moved to vacate the DJA in 2015 after Muldrow violated the terms of his extended supervision in a different case by, inter alia, cutting off the GPS tracker he was required to wear as a condition of that extended supervision, absconding, and using controlled substances. Muldrow did not contest the facts underlying the State's motion. The circuit court vacated the DJA and ordered that a judgment of guilt be entered on count one. The court then withheld sentence and placed Muldrow on ten years of probationary supervision. Additionally, following the judgment of guilt being taken against him as to count one, and by dint of Wis. Stat. § 301.48(2)(a)3m., Muldrow became subject to lifetime GPS tracking.[10]

¶11 Muldrow moved to withdraw his plea in October 2015——approximately six months after the DJA was revoked and judgment of conviction was entered on count one. His motion alleged that his guilty plea was not made in a knowing fashion because the circuit court did not inform him that pleading guilty to count one would subject him to lifetime GPS tracking pursuant to Wis. Stat. § 301.48(2)(a)3m. Muldrow contended that his unknowing guilty plea was a violation of his right to due process because

---

[10] During the time of his probationary supervision, GPS tracking would occur by operation of Wis. Stat. § 301.48(2)(a)1m.

lifetime GPS tracking is a punishment for a conviction of second-degree sexual assault of a child of which the circuit court was required to notify him.

¶12 Muldrow relied to a great extent on a federal district court decision that concluded lifetime GPS tracking violated the Ex Post Facto Clause of the United States Constitution[11] if applied to a person convicted before the statute was in effect. Belleau v. Wall, 132 F. Supp. 3d 1085 (E.D. Wis. 2015), rev'd, 811 F.3d 929 (7th Cir. 2016). The threshold question for ex post facto violations is the same as the threshold question in the present case: is the sanction "punishment?" In concluding that lifetime GPS tracking is punishment, the district court in Belleau applied the intent-effects test, which is commonly used by state and federal courts in ex post facto decisions. Id. at

---

[11] The Ex Post Facto Clause of the United States Constitution states, in relevant part, "[n]o state shall . . . pass any . . . ex post facto law." U.S. Const. art. I, § 10.

The Wisconsin Constitution also prohibits passage of ex post facto laws. Wis. Const. art. I, § 12 ("No . . . ex post facto law . . . shall ever be passed."). We construe the protections afforded by Article I, Section 12 of the Wisconsin Constitution to be equivalent to those afforded by Article I, Section 10 of the United States Constitution. See State v. Thiel, 188 Wis. 2d 695, 699, 524 N.W.2d 641 (1994); see also State v. Houghton, 2015 WI 79, ¶50, 364 Wis. 2d 234, 868 N.W.2d 143 (internal quotation marks and quoted source omitted) (alterations in original) ("Where . . . the language of the provision in the state constitution is virtually identical to that of the federal provision . . . , Wisconsin courts have normally construed the state constitution consistent with the United States Supreme Court's construction of the federal constitution.").

1095; see also, e.g., Smith v. Doe, 538 U.S. 84 (2003); State v. Scruggs, 2017 WI 15, 373 Wis. 2d 312, 891 N.W.2d 786. The district court determined that the intent of lifetime GPS tracking is not punitive, but the effect is. Belleau, 132 F. Supp. 3d at 1104.

¶13 Shortly before the circuit court hearing on Muldrow's motion, the United States Court of Appeals for the Seventh Circuit reversed the district court's conclusion that lifetime GPS tracking is punishment. Belleau v. Wall, 811 F.3d 929 (7th Cir. 2016). The panel unanimously concluded that lifetime GPS tracking is a less onerous sanction than civil commitment pursuant to Wis. Stat. ch. 980. Id. at 937. Thus, the court reasoned, "if civil commitment is not punishment, as the Supreme Court has ruled, then a fortiori, neither is having to wear an anklet monitor." Id.

¶14 The circuit court, relying on the Seventh Circuit's decision in Belleau, denied Muldrow's motion to withdraw his plea. The circuit court concluded that lifetime GPS tracking is not punishment and, consequently, Muldrow did not have a right to be informed that his guilty plea would result in its imposition.

¶15 The court of appeals affirmed. Muldrow, 377 Wis. 2d 223, ¶1. The court of appeals observed a certain lack of clarity as to the correct test for determining whether a particular sanction is punishment such that due process requires a defendant be informed of it before entering a plea of guilty. Id., ¶15. It noted, for example, that in State v. Dugan, 193

8

Wis. 2d 610, 620-21, 534 N.W.2d 897 (Ct. App. 1995), the court of appeals applied the fundamental purpose test to determine that restitution is not punishment. Moreover, it observed that we applied a truncated version of the intent-effects test in Bollig, 232 Wis. 2d 561, to determine that Wisconsin's Sexual Offender Registry was not punishment. In Bollig, we emphasized the lack of punitive intent, but provided only conclusory analysis of the punitive effects of the registry. See id., ¶¶23-26.

¶16 Be that as it may, the court of appeals concluded that Muldrow's claim failed under either test. Muldrow, 377 Wis. 2d 223, ¶23. The court of appeals combined its analysis of the fundamental purpose test with the intent prong of the intent-effects test. Id., ¶35. It concluded that the fundamental purpose/intent of lifetime GPS tracking is protection of the public, not punishment of the offender. Id. The court then concluded that the effect of lifetime GPS tracking is not punitive. Id., ¶¶36-40 (citing Belleau, 811 F.3d at 937-38).

¶17 Muldrow petitioned this court for review, which we granted on October 17, 2017.

### B. Lifetime GPS Tracking

¶18 The DOC has not yet begun tracking Muldrow pursuant to Wis. Stat. § 301.48(2)(a)3m. because he has completed neither his probationary supervision on count one nor his sentences imposed as a consequence for various other criminal conduct. However, the parties agree that the DOC will begin tracking

9

Muldrow pursuant to § 301.48(2)(a)3m. upon either the conclusion of his probationary supervision or his release from incarceration, whichever occurs later. However, pursuant to a stipulation between the parties, the circuit court took judicial notice of the practical effects of lifetime GPS tracking as described in the district court opinion in Belleau, 132 F. Supp. 3d 1085, rev'd on other grounds, 811 F.3d 929 (7th Cir. 2016).

¶19 Certain serious sex offenders are subject to lifetime GPS tracking. Wis. Stat. § 301.48(2).[12] Though offenders are constantly tracked, the DOC reviews the data in only two

---

[12] Offenders are subject to lifetime GPS tracking when released from DOC supervision after conviction (or released from Department of Health Services supervision after acquittal on the basis of mental disease or defect) for a violation of Wis. Stat. §§ 948.02 or 948.025 in one of four sets of circumstances. Wis. Stat. § 301.48(2)(a)1.-5.

1. (i) the offender had sexual contact or intercourse with (ii) a victim who is unrelated to the offender, (iii) is under 13 years old, and (iv) suffered great bodily harm as a result of the sexual contact or intercourse. Wis. Stat. § 301.48(1)(cm)1.

2. (i) the offender had sexual intercourse with (ii) a victim who is not related to the offender and (iii) is under 12 years old. Wis. Stat. § 301.48(1)(cm)2.

3. (i) the offender had sexual intercourse (ii) by use or threat of force or violence (iii) with a victim who is not related to the offender that (iv) is under 16 years old. Wis. Stat. § 301.48(1)(cn)1.

4. (i) the offender had sexual contact (ii) by use or threat of force or violence (iii) with a victim who is not related to the offender that (iv) is under 16 years old when (v) the offender was over 18 years old. Wis. Stat. § 301.48(1)(cn)2.

circumstances. Each night, DOC personnel view location data from the previous day to confirm the offender's whereabouts. Belleau, 132 F. Supp. 3d at 1091, rev'd on other grounds, 811 F.3d 929 (7th Cir. 2016). Second, DOC personnel receive an alert whenever an offender leaves an inclusion zone[13] or lingers in an exclusion zone.[14] Id.; Wis. Stat. § 301.48(3)(a)3.

¶20 Though called "lifetime" GPS tracking, some offenders may be released from tracking. Wis. Stat. § 301.48(6)-(7m). An offender who was not convicted of a crime during the period of tracking and who was not previously committed pursuant to Wis. Stat. ch. 980 may petition for termination of lifetime tracking after 20 years. § 301.48(6)(b). In addition, the DOC may petition to terminate lifetime tracking of an offender who is "permanently physically incapacitated." § 301.48(7). Finally, lifetime GPS tracking is terminated if the offender moves out of Wisconsin. § 301.48(7m).

¶21 The GPS tracker is attached to the offender's ankle by a black neoprene rubber strap. Belleau, 132 F. Supp. 3d at 1090, rev'd on other grounds, 811 F.3d 929 (7th Cir. 2016). The offender is prohibited from ever removing it. Id. To that end, the tracker is waterproof up to 15 feet to allow for bathing and

---

[13] An inclusion zone is an area that the offender is prohibited from leaving. Wis. Stat. § 301.48(1)(c).

[14] An exclusion zone is an area that the offender is prohibited from entering other than to pass through. Wis. Stat. § 301.48(1)(a).

swimming. Id. The tracker can, however, cause blistering, especially when wet. Id.

¶22 The tracker is approximately 2.5 x 3.5 x 1.5 inches. Id. Though small, the tracker is noticeable; its position at the bottom of the offender's ankle means that it is always visible if the offender wears shorts or sits down while wearing pants. Id. at 1091. Even if the tracker is totally covered by the offender's pants, it nonetheless creates a noticeable bulge on the offender's pant leg. Id.

¶23 The tracker must be charged for one hour once per day, which requires the offender to stay close enough to an electrical outlet for the cord to reach. Id. at 1090. The tracker has a speaker that can play messages sent from DOC personnel, such as orders to call the DOC, orders to report to the DOC, reminders of upcoming appointments with DOC personnel, and warnings for low batteries. Id. at 1091. These messages can be heard by anyone within earshot of the offender. Id.

## II. STANDARD OF REVIEW

¶24 Whether a plea was entered knowingly, voluntarily, and intelligently is a question of constitutional fact. Bollig, 232 Wis. 2d 561, ¶13. We uphold the circuit court's findings of historical fact unless clearly erroneous. Id. We apply constitutional principles to those historical facts de novo. Id.

¶25 In determining whether Wis. Stat. § 301.48 is punishment, we must interpret the statute. We interpret the

12

statute de novo. State v. Negrete, 2012 WI 92, ¶15, 343 Wis. 2d 1, 819 N.W.2d 749.

### III. ANALYSIS

¶26 We first consider the proper test for determining whether a sanction is "punishment" such that due process requires a defendant be informed of it before entering a plea of guilty. We hold that the intent-effects test is the proper test used to determine whether a potential sanction is punishment such that due process requires a defendant be informed of it before entering a plea of guilty.

¶27 Next, we apply the intent-effects test to the facts of Muldrow's case. Applying the intent-effects test, we hold that neither the intent nor effect of lifetime GPS tracking is punitive and, consequently, the circuit court was not required to inform Muldrow of it.

A. Whether a Sanction is Punishment Such that Due Process Requires a Defendant be Informed of it Before Entering a Plea of Guilty is Determined by Application of the Intent-Effects Test.

¶28 The State brings to our attention three proposed tests to determine whether a sanction is punishment. First, the State asks us to adopt a bright-line rule whereby only imprisonment and fines are punishment. The State grounds this test on State v. Finley, 2016 WI 63, 370 Wis. 2d 402, 882 N.W.2d 761. We reject this proposal because to do otherwise would be to read too much into our holding in Finley. We did not undertake a comprehensive analysis of what constitutes punishment in that case because it was not centered on the question of what kind of

13

sanctions constitute punishment. Rather, in Finley, the circuit court's error was misstating the defendant's potential term of imprisonment——a sanction that is indisputably punishment. Id., ¶8.

¶29 In the alternative, the State encourages us to adopt the "fundamental purpose" test. The fundamental purpose test looks to "the fundamental purpose of the sentencing provision at issue" in order to determine whether a particular sanction constitutes punishment. Dugan, 193 Wis. 2d at 620. Put another way, the fundamental purpose test is really the intent-effects test without consideration of any punitive effect of the sanction. We see no reason to adopt this test as it provides a less comprehensive and, therefore, less useful analysis than the third test proposed by the State, the intent-effects test.

¶30 The third time here indeed being the charm, we choose to adopt the State's final proposed standard, the intent-effects test. The intent-effects test was first articulated by the United States Supreme Court in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-70 (1963). The issue in Mendoza-Martinez was whether a statute that automatically stripped American citizenship, without any hearing, from a person who left the country to avoid the draft violated the right to due process. Id. at 165-66. The Court held that forfeiture of citizenship was a punishment that could be imposed only after conviction in a criminal trial with all of the protections of the Fifth and Sixth Amendments to the United States Constitution. Id. at 167.

14

¶31 In determining whether forfeiture of citizenship was a punishment, the Court first looked to the "statute's primary function," i.e., intent. Id. at 169. However, the Court's analysis did not end there.[15] The Court also considered whether the effect of the statute was "penal or regulatory in character." Id. at 168. To aid its determination of the effect of the statute, the Court set out seven non-exclusive factors:

> [1] Whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishment——retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned . . . .

Id. (footnotes omitted).

¶32 The intent-effects test is used in many contexts to determine whether a sanction is punishment. The United States Supreme Court applied the intent-effects test to determine whether Alaska's sex offender registry was punishment for purposes of the ex post facto clause, Smith, 538 U.S. 84; whether monetary penalties and revocation of occupational licenses were punishment such that a subsequent criminal

---

[15] This is in contrast to the fundamental purpose test. We agree with the court of appeals that the fundamental purpose test is equivalent to the intent prong of the intent-effects test. State v. Muldrow, 2017 WI App 47, ¶24, 377 Wis. 2d 223, 900 N.W.2d 859.

prosecution based on the same conduct violated the Fifth Amendment's double jeopardy clause, Hudson v. United States, 522 U.S. 93 (1997); and whether monetary penalties assessed against those who discharged hazardous substances into navigable waters were punishment such that a requirement that a person report any such discharge violated the Fifth Amendment's protection against compulsory self-incrimination, United States v. Ward, 448 U.S. 242 (1980).

¶33 Wisconsin courts have similarly used the intent-effects test to determine whether a sanction is punishment in multiple contexts. For example, Wisconsin courts have applied it to determine whether civil commitment pursuant to Wis. Stat. ch. 980 is punishment such that it violates either the ex post facto clause or double jeopardy clause, State v. Rachel, 2002 WI 81, 254 Wis. 2d 215, 647 N.W.2d 762; whether the mandatory DNA surcharge is punishment such that it violates the ex post facto clause, Scruggs, 373 Wis. 2d 312; and whether monetary penalties for those who do not comply with a county ordinance regulating large gatherings are punishment such that they may be imposed only after a criminal trial with full Fifth and Sixth Amendment protections, Sauk Cty. v. Gumz, 2003 WI App 165, 266 Wis. 2d 758, 669 N.W.2d 509.

¶34 Other jurisdictions have applied the intent-effects test to the issue of whether a sanction is punishment such that the defendant must be informed of it in order for a guilty plea to be knowing, voluntary, and intelligent. People v. Cole, 817

16

N.W.2d 497 (Mich. 2012); Ward v. State, 315 S.W.3d 461 (Tenn. 2010).

¶35 We conclude that the intent-effects test is the proper test to determine whether a sanction is punishment such that due process requires a defendant be informed of it before entering a plea of guilty. We do so not out of habit or blind adherence to custom. We do so because the intent-effects test has been effectively applied by courts in multiple contexts and, consequently, brings with it a broad and deep base of case law, which provides us with the type of helpful guidance necessary to our analysis of the issue we address herein. Winnebago Cty. v. J.M., 2018 WI 37, ¶41, ___ Wis. 2d ___, ___ N.W.2d ___ (adopting the Strickland[16] standard in Wis. Stat. ch. 51 commitments because, inter alia, "the Strickland standard carries with it a developed body of case law that will aid courts in the efficient and timely resolution of claims of ineffective assistance of counsel").

B. Application of the Intent-Effects Test to Wis. Stat. § 301.48 Leads us to Conclude that Lifetime GPS Tracking is Not Punishment.

¶36 In his application of the intent-effects test, Muldrow relies primarily on the district court's decision in Belleau, 132 F. Supp. 3d 1085, rev'd, 811 F.3d 929 (7th Cir. 2016), as well as the Michigan Supreme Court's decision in Cole, 817 N.W.2d 497. He does so in order to lay the foundation that Wis.

---

[16] Strickland v. Washington, 466 U.S. 668 (1984).

17

Stat. § 301.48 is punitive. For its part, the State relies primarily on the Seventh Circuit's decision in Belleau, 811 F.3d 929. Though, of course, we are not bound by the Seventh Circuit's decision in Belleau, we are persuaded by it because it correctly applies the law, whereas the decision of the district court does not. See Madison Teachers, Inc. v. Walker, 2014 WI 99, ¶68, 358 Wis. 2d 1, 851 N.W.2d 337 ("While the Seventh Circuit's analysis of Act 10 is not binding on this court, we find no reason to disagree with its clear and rational articulation of the law."). Further, Cole is distinguishable from the present case due to differences between the Michigan and Wisconsin lifetime GPS tracking statutes.

1. The intent of lifetime GPS tracking is not punitive.

¶37 "Determining whether the legislature intended [a] statute to be punitive 'is primarily a matter of statutory construction . . . .'" Scruggs, 373 Wis. 2d 312, ¶17 (quoting Rachel, 254 Wis. 2d 215, ¶40). Accordingly, we use the rules of statutory construction to determine "whether the legislature expressly or impliedly indicated" whether Wis. Stat. § 301.48 is "a civil remedy or a criminal penalty." Id., ¶18.

¶38 Statutory interpretation begins with the plain meaning of the text. State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. Context and structure are important to statutory meaning. Id., ¶46. Where a statutory provision is codified is indicative of whether the legislature intended a provision to be punitive. Smith, 538

18

U.S. at 94; Scruggs, 373 Wis. 2d 312, ¶24; see also Tyson v. State, 51 N.E.3d 88, 93 (Ind. 2016).

¶39 Muldrow relies on the Michigan Supreme Court's decision in Cole, 817 N.W.2d 497, to argue that the intent of lifetime GPS tracking is punitive. We are not persuaded. The Michigan lifetime GPS tracking statute is readily distinguishable from Wis. Stat. § 301.48. For instance, the Michigan lifetime GPS tracking statute states, in relevant part:

> A person convicted . . . [of] criminal sexual conduct . . . against an individual less than 13 years of age shall be sentenced to lifetime electronic tracking . . .

Mich. Comp. Laws § 750.520n (emphasis added). Additionally, a plain reading of the relevant Michigan statutes makes clear that the Michigan legislature intended its lifetime GPS tracking statutory scheme to be a punitive measure:

> (2) Criminal sexual conduct in the first degree is a felony punishable as follows:
>
> . . .
>
> > (d) In addition to any other penalty imposed under subdivision (a) or (b), the court shall sentence the defendant to lifetime electronic tracking under section 520n.

Mich. Comp. Laws § 750.520b(2)(d) (emphasis added).

> (2) Criminal sexual conduct in the second degree is a felony punishable as follows:
>
> . . .
>
> > (b) In addition to the penalty specified in subdivision (a), the court shall sentence the defendant to lifetime electronic tracking under section 520n . . .

19

Mich. Comp. Laws § 750.520c(2)(b) (emphasis added).

¶40 In Cole, the Michigan Supreme Court quite reasonably concluded that lifetime GPS tracking is intended to be punitive because the relevant statutes expressly refer to it as a "penalty." Cole, 817 N.W.2d at 502-03. Or, put another way, it is, by the plain language of the statute, a "punishment."[17] See id. In stark contrast, the language, structure, and context of Wis. Stat. § 301.48 demonstrate that our legislature did not intend lifetime GPS tracking to be punitive.

¶41 Our legislature has set forth the purpose of chapters 301-304, which include "provid[ing] a just, humane[,] and efficient program of rehabilitation of offenders." Wis. Stat. § 301.001.[18] "We take the legislature at its word." Wis. Med.

---

[17] "Punishment" is defined, inter alia, as a "penalty . . . assessed against a person who has violated the law." Black's Law Dictionary 1428 (10th ed. 2014).

[18] Wisconsin Stat. § 301.001 states in whole:

The purposes of this chapter and chs. 302 to 304 are to prevent delinquency and crime by an attack on their causes; to provide a just, humane and efficient program of rehabilitation of offenders; and to coordinate and integrate corrections programs with other social services. In creating the department of corrections, chs. 301 to 304, the legislature intends that the state continue to avoid sole reliance on incarceration of offenders and continue to develop, support and maintain professional community programs and placements.

Express statements of legislative purpose are part of a plain-meaning inquiry. Wilmet v. Liberty Mut. Ins. Co., 2017 WI App 16, ¶13, 374 Wis. 2d 413, 893 N.W.2d 251 (citing State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶49, 271 Wis. 2d 633, 681 N.W.2d 110).

Soc'y, Inc. v. Morgan, 2010 WI 94, ¶102, 328 Wis. 2d 469, 787 N.W.2d 22. These purposes are indisputably non-punitive in nature, and are reflective of an intent to rehabilitate offenders and protect the public rather than to punish offenders.

¶42 The structure and context of Wis. Stat. § 301.48 demonstrate that the legislature considers punitive sanctions intended to punish criminal conduct to be distinct from regulatory sanctions, which are intended to have a focus that encompasses a broad array of considerations as opposed to the singular nature of punishment of the offender. The legislature set out sanctions that are indisputably punishment——imprisonment and fines——in chapter 939. See Finley, 370 Wis. 2d 402, ¶4. The legislature set out many of the sanctions it considers regulatory in nature in chapter 301 and has interspersed others throughout the statutes.

¶43 Conversely, lifetime GPS tracking is located in chapter 301, which sets forth both the organizational overview for the DOC and administrative matters such as: purchasing care and services for prisoners, Wis. Stat. § 301.08; payment of benefits, Wis. Stat. § 301.085; and purchases, bills, audits, and payments, Wis. Stat. § 301.10. In contrast, disciplinary procedures such as punishments for misbehavior by those subject to DOC supervision, e.g., solitary confinement, are contained in chapter 302. See, e.g., Wis. Stat. § 302.40.

¶44 Wisconsin Stat. § 301.48 is, in fact, surrounded by statutes that establish various safeguards to protect the public

21

from persons convicted of criminal conduct.  See generally Wis. Stat. §§ 301.45-301.49.  When courts have had the opportunity to review whether these safeguards constitute punishment, the statutes have, in every instance, been found to be non-punitive in nature.

¶45  Wisconsin Stat. §§ 301.45 and 301.46 govern the Wisconsin sex offender registry.  Section 301.45 requires sex offenders to register with the Wisconsin sex offender registry.  Section 301.46 regulates the use of information in the registry.  We held that mandatory compliance with the registry is not punishment in Bollig, 232 Wis. 2d 561, ¶21; see also id., ¶20 (collecting cases from other jurisdictions holding that sex offender registries are not punishment); Smith, 538 U.S. at 105-06 (holding that Alaska's sex offender registry is not punishment).  Likewise, the fee assessed against sex offenders to pay for the registry has been found not to be punishment.  Mueller v. Raemisch, 740 F.3d 1128, 1135 (7th Cir. 2014).

¶46  Wisconsin Stat. § 301.47, the statute immediately preceding lifetime GPS tracking, prohibits sex offenders from changing their names (whether legally or through common usage).  The only court to analyze whether § 301.47 is punitive concluded

22

that it is not. Doe v. Raemisch, 895 F. Supp. 2d 897, 908 (E.D. Wis. 2012), rev'd on other grounds, Mueller, 740 F.3d at 1133.[19]

¶47 The final two sections (Wis. Stat. §§ 301.475 and 301.49) of chapter 301 have never been challenged as punitive. Section 301.475 requires sex offenders to notify school officials when the offender seeks to enter school property. Section 301.49 establishes an analogous GPS tracking program for persons who violate a domestic abuse or harassment restraining order or injunction.

¶48 A review of the three provisions for terminating lifetime GPS tracking indicate that the intent of tracking is protecting the public. The three means of terminating tracking——upon motion of the offender after 20 years of full compliance, upon motion of the DOC based on offender incapacitation, and upon the offender moving out of state——are tailored to ensure an offender is tracked only when he poses a threat to Wisconsin residents. See supra, ¶19. This tailoring strongly indicates that the intent of lifetime GPS tracking centers more closely around the protection of the public than it does punishment of

---

[19] The district court concluded that enforcing Wis. Stat. § 301.47 against a sex offender convicted before its passage did not violate the ex post facto clause because § 301.47 creates a new crime rather than increasing punishment for a prior crime. Doe v. Raemisch, 895 F. Supp. 2d 897, 908 (E.D. Wis. 2012). The Seventh Circuit reversed the district court's decision because the plaintiffs did not have standing to challenge § 301.47. Mueller v. Raemisch, 740 F.3d 1128, 1133 (7th Cir. 2014). Consequently, the Seventh Circuit did not reach the merits of whether § 301.47 is punishment. Id.

the offender.  Put simply, if punishment was the objective, the legislature would have had no reason to allow termination of "lifetime" GPS tracking.

2.  The effect of lifetime GPS tracking is not punitive.

¶49  We now consider whether lifetime GPS tracking "is so punitive in effect as to transform [it] into a criminal penalty."  Scruggs, 373 Wis. 2d 312, ¶39 (citing Rachel, 254 Wis. 2d 215, ¶42).  We give the legislature's decision to label a statute as a civil remedy "great deference."  Id., ¶20 (citing Rachel, 254 Wis. 2d 215, ¶42).  "[O]nly the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Hudson, 522 U.S. at 100 (internal quotation marks omitted) (citing Ward, 488 U.S. at 249).

a.  We determine whether lifetime GPS tracking is punitive by applying the seven Mendoza-Martinez factors.

i.  Whether lifetime GPS involves an affirmative disability or restraint.

¶50  The "paradigmatic affirmative restraint" is imprisonment.  Smith, 538 U.S. at 100.  Lifetime GPS tracking does not resemble imprisonment because the offender is not confined and has substantial freedom of movement (subject only to inclusion zones and exclusion zones).  As the Seventh Circuit persuasively stated, "if civil commitment is not punishment, as the Supreme Court has ruled, then a fortiori, neither is having to wear an anklet monitor."  Belleau, 811 F.3d at 937.

24

¶51 Muldrow is "restrained" in the sense that he must be close enough to an electrical outlet to charge the GPS tracker for one hour each day. However, sitting near a wall for an hour per day is so "minor and indirect" a restraint that it does not have the effect of punishment. Id. at 943 (Flaum, J., concurring) (quoting Smith, 538 U.S. at 100).

### ii. Whether lifetime GPS tracking has historically been regarded as punishment.

¶52 Lifetime GPS tracking has not historically been regarded as punishment——largely because GPS is relatively new technology. Id. (Flaum, J., concurring). Muldrow contends that lifetime GPS tracking resembles historical forms of punishment such as public shaming. The analogy fails because any "shaming" in the GPS tracker context is an unintended byproduct of the associated technology and can be minimized, if not eliminated—— albeit, at some inconvenience——by the offender. The GPS tracker is as small as present technology permits[20] and is placed in a discreet location——the bottom of the offender's ankle. In contrast, public shaming was intended to bring as much attention as possible to the offender's status. Dan M. Kahan & Eric A. Posner, Shaming White-Collar Criminals: A Proposal for Reform of the Federal Sentencing Guidelines, 42 J. Law & Econ. 365, 368

---

[20] It has been noted elsewhere that just as with other electronic devices, as technology advances, the size and, therefore, the apparentness of the monitor will be reduced. Belleau v. Wall, 811 F.3d 929, 939 (7th Cir. 2016) (Flaum, J., concurring).

(1999) ("Shaming is the process by which citizens publicly and self-consciously draw attention to the bad dispositions or actions of an offender . . . ."); see also Belleau, 811 F.3d at 943 (Flaum, J., concurring).

### iii. Whether lifetime GPS tracking comes into play only on a finding of scienter.

¶53 Lifetime GPS tracking is contingent upon a criminal conviction (or acquittal by reason of mental disease or defect). Wis. Stat. §§ 301.48(2)(a)1-5. However, no scienter is required for the imposition of lifetime GPS tracking. If the statutory criteria are met, the offender is subject to lifetime GPS tracking. See Wis. Stat. § 301.48(2). This is analogous to civil commitment pursuant to chapter 980, which similarly relies on a prior conviction, but does not contain a scienter requirement for the commitment itself. See Wis. Stat. § 980.02(2). We held in Rachel, 254 Wis. 2d 215, ¶51, that requiring a criminal conviction as a prerequisite to civil commitment did not mean that the commitment itself had a scienter requirement. Rachel's reasoning applies with equal strength here.

### iv. Whether lifetime GPS will promote the traditional aims of punishment——deterrence and retribution.

¶54 We acknowledge that lifetime GPS tracking likely promotes deterrence because the offender knows that his location is constantly known to authorities——indeed, this is likely one of the purposes of lifetime GPS tracking. Belleau, 811 F.3d at 944 (Flaum, J., concurring). However, a statute is not punitive

26

simply because it may deter crime. As the United States Supreme Court has recognized, "[a]ny number of governmental programs might deter crime without imposing punishment." Smith, 538 U.S. at 102. Lifetime GPS tracking is one such program.

¶55 A statute promotes retribution if it "affix[es] culpability for prior criminal conduct." Kansas v. Hendricks, 521 U.S. 346, 362 (1997). Though many offenders are subject to lifetime GPS tracking because they were found guilty of a criminal offense, some are subject to lifetime GPS tracking because they were found not guilty due to mental disease or defect. Wis. Stat. §§ 301.48(2)(a)4-5. In Hendricks, the Court relied heavily on the fact that some of the persons committed pursuant to Kansas's sexually violent person law were not criminally responsible in order to reach its conclusion that the statute did not promote retribution. Hendricks, 521 U.S. at 362. It did so as a result of its reasoning that if some of the committed persons were not criminally responsible, then the statute was not seeking to affix culpability upon them for any prior criminal conduct. Id. The same reasoning applies here. This is so because lifetime GPS tracking applies to those who are criminally culpable for their conduct as well as to those who are not by reason of mental disease or defect.

v. Whether the behavior to which lifetime GPS tracking applies is already a crime.

¶56 Where "[e]vidence of a crime . . . is essential to the [sanction]," then the sanction is more likely punitive. Lipke v. Lederer, 259 U.S. 557, 562 (1922). Evidence of past criminal

27

conduct (either a conviction or acquittal on the basis of mental disease or defect) is necessary to trigger lifetime GPS tracking, but no new, uncharged criminal conduct is required. Wis. Stat. § 301.48(2). This is in contrast to the tax at issue in Lipke, which the Court found punitive because it applied only to alcohol manufacture and sale that was already criminal and could be separately criminally charged. 259 U.S. at 561.

  vi. Whether an alternative purpose to which lifetime GPS
  tracking may rationally be connected is assignable for it.

¶57 The existence of an alternative non-punitive purpose for a sanction is considered "the most significant factor" in determining whether the effect of a sanction is punitive. Belleau, 811 F.3d at 943 (Flaum, J., concurring) (quoting Smith, 538 U.S. at 103). The non-punitive purpose of lifetime GPS tracking is protecting the public from future sex offenses. Id. at 937; id. at 943 (Flaum, J., concurring).

¶58 Protecting the public from future sex offenses has been deemed a non-punitive purpose in analogous contexts: sex offender registration, Smith, 538 U.S. at 103; State v. Smith, 2010 WI 16, ¶26, 323 Wis. 2d 377, 780 N.W.2d 90; civil commitment of sex offenders, Hendricks, 521 U.S. at 363; and municipal ordinances restricting sex offender residency, City of S. Milwaukee v. Kester, 2013 WI App 50, ¶30, 347 Wis. 2d 334, 830 N.W.2d 710.

¶59 Lifetime GPS tracking has a rational relationship to this non-punitive purpose because it ensures law enforcement will have ready access to evidence of an offender's whereabouts.

28

Belleau, 811 F.3d at 938. This rational relationship may also work to the benefit of the offender: location evidence from lifetime GPS tracking can prove an accurate alibi just as easily as it can disprove a false alibi.

vii. Whether lifetime GPS tracking appears excessive in relation to the alternative purpose assigned.

¶60 Lifetime GPS tracking is commensurate with the goal of protecting the public. It provides a middle ground between releasing dangerous sex offenders into the public wholly unsupervised and civil commitment pursuant to chapter 980. In light of the "frightening and high" rate of recidivism for sex offenders, the relatively minimal intrusion of lifetime GPS tracking (especially when compared to chapter 980 commitment) is not excessive in relation to protecting the public. Smith, 538 U.S. at 104.

¶61 The opportunity to terminate tracking, see supra, ¶¶19, 45, keeps lifetime GPS tracking closely-tailored to its purpose. Unlike any other sanction known to Wisconsin law, any offender who wishes to discontinue "lifetime" GPS tracking can terminate it by simply moving out of state. Wis. Stat. § 301.48(7m).

IV. CONCLUSION

¶62 We hold that the intent-effects test is the proper test used to determine whether a sanction is punishment such that due process requires a defendant be informed of it before entering a plea of guilty.

29

¶63  Applying the intent-effects test, we hold that neither the intent nor effect of lifetime GPS tracking is punitive. Consequently, Muldrow is not entitled to withdraw his plea because the circuit court was not required to inform him that his guilty plea would subject him to lifetime GPS tracking. Accordingly, we affirm.

*By the Court.*—The decision of the court of appeals is affirmed.