COURT OF APPEALS
DECISION
DATED AND FILED

September 10, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2017AP1871**

**STATE OF WISCONSIN**

Cir. Ct. No.  2014CF42

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

WILLIAM T. PETERSON,

    DEFENDANT-APPELLANT.

        APPEAL from an order of the circuit court for Eau Claire County: JON M. THEISEN, Judge.  *Affirmed*.

        Before Stark, P.J., Hruz and Seidl, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   William Peterson, pro se, appeals an order denying his WIS. STAT. § 974.06 (2017-18)[1] postconviction motion for plea withdrawal and sentence modification.   Peterson argues that his plea was unknowing, thus entitling him to plea withdrawal, because the circuit court did not inform him at the plea hearing that read-in offenses could be used to increase his sentence up to the maximum or that it could order him to have no contact with his biological daughter.  Peterson also contends he is entitled to sentence modification because the court erroneously weighed sentencing factors.  We reject these arguments and affirm the order.

### BACKGROUND

¶2     The State charged Peterson with first-degree sexual assault of a child under the age of thirteen; first-degree sexual assault of a child under the age of sixteen, by use of force or violence; first-degree sexual assault of a child under the age of twelve; incest with a child by a stepparent; felony intimidation of a victim; false imprisonment (domestic abuse); two counts of repeated sexual assault of a child; and three counts of exposing genitals or pubic area.  In exchange for his guilty pleas to one count of repeated sexual assault of a child and one count of felony intimidation of a victim, the State agreed to cap its sentence recommendation at ten years' initial confinement, but it remained free to argue the term of extended supervision.  The remaining counts were dismissed and read in for sentencing purposes.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶3     At the sentencing hearing, Jonathan Dickey, a licensed psychologist from the Division of Community Corrections at the Wisconsin Department of Corrections, testified about a "Sex Offender Evaluation Report" he had prepared for the circuit court.  Dickey opined that Peterson fell within the "moderate" risk range for sex offense recidivism, but that risk could be reduced through proper treatment and external controls.  Dickey further explained that his assessment did not take into account the fact that Peterson had other alleged victims, because the tools used did not account for charges occurring during the same time period that did not result in convictions, such as the dismissed and read-in charges.  When asked to discuss the dynamic factors affecting Peterson's risk level, Dickey noted, among other things, that there was "partial evidence of sexual interest in children," noting the victim was eleven years old.  Apart from evaluating Peterson's overall level of risk to sexually reoffend, Dickey did not offer a sentence recommendation.

¶4     Defense counsel expanded on Dickey's written report, emphasizing a statement therein that Peterson's crimes were likely motivated by a "confluence" of psychological problems rather than a pedophilic interest in children.  Defense counsel recommended five years' initial confinement and twenty to twenty-five years' extended supervision for the repeated sexual assault of a child count, with a concurrent sentence of two years' initial confinement and two to three years' extended supervision for the intimidation of a victim count.  Consistent with the plea agreement, the State recommended ten years' initial confinement followed by twenty years' extended supervision for the repeated sexual assault of a child count.  For the intimidation count, the State recommended a withheld sentence and five years' probation.

¶5 The circuit court ultimately followed the State's sentencing recommendation. The court also ordered that Peterson "have no contact with anyone under 18 other than incidental contact," adding that "the contact should never be alone." However, the court ordered that Peterson could have contact with his minor biological daughter if she requested contact and once it was screened by the Department of Corrections "for appropriateness."

¶6 After the time for filing a direct appeal had expired, Peterson filed the underlying motion requesting plea withdrawal and sentence modification pursuant to WIS. STAT. § 974.06. Peterson also requested a *Machner*[2] hearing, though he did not allege a claim of ineffective assistance of counsel. After a postconviction hearing limited to argument, the court denied Peterson's motion. This appeal follows.

## DISCUSSION

¶7 As a threshold matter, the State asserts that this court lacks jurisdiction to review this matter because there is no written order in the record on appeal. A judgment or order must be reduced to writing and filed with the clerk of the circuit court before an appeal can be taken. *Ramsthal Advert. Agency v. Energy Miser, Inc.*, 90 Wis. 2d 74, 75, 279 N.W.2d 491 (Ct. App. 1979). The transcript of the hearing does not satisfy the requirement that a written judgment or order be entered. *See State v. Powell*, 70 Wis. 2d 220, 222, 234 N.W.2d 345 (1975).

---

[2] *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

¶8      The circuit court orally denied Peterson's WIS. STAT. § 974.06 motion at a June 23, 2017 hearing. Peterson subsequently wrote the court requesting a "written judgment" so that he could file a notice of appeal. In an October 26, 2017 letter signed by the judge, the court responded to Peterson's request stating it was "unclear as to which motions that [it] denied, that [Peterson] believe[d] do not include an order." The court further stated that "[a]n appeal should go to the appellate court," suggesting its belief that all requests for relief had been denied at that point. Ambiguities should be liberally construed to preserve the right to appeal. *See **Wambolt v. West Bend Mut. Ins. Co.***, 2007 WI 35, ¶50, 299 Wis. 2d 723, 728 N.W.2d 670. We therefore construe the October 26, 2017 letter as the order denying Peterson's § 974.06 motion.

¶9      Although the order was filed after the notice of appeal, the notice of appeal is deemed filed on the date of entry of the order on appeal. *See* WIS. STAT. § 808.04(8). To the extent the notice of appeal does not identify the October 26, 2017 order, the failure of the notice of appeal to correctly identify the final appealable document is not fatal to appellate jurisdiction. *See **Carrington v. St. Paul Fire & Marine Ins. Co.***, 169 Wis. 2d 211, 217 n.2, 485 N.W.2d 267 (1992).

¶10     Turning to the merits of this appeal, Peterson contends he should be allowed to withdraw his plea because it was not knowingly entered. In a postsentence motion for plea withdrawal, the defendant carries the heavy burden of establishing, by clear and convincing evidence, that plea withdrawal is necessary to correct a manifest injustice. *See **State v. Thomas***, 2000 WI 13, ¶16, 232 Wis. 2d 714, 605 N.W.2d 836.

¶11     The manifest injustice standard requires the defendant to show "a serious flaw in the fundamental integrity of the plea." *Id.* (citation omitted).  One way for a defendant to meet this burden is to show that he or she did not knowingly, intelligently, or voluntarily enter the plea.  *State v. Brown*, 2006 WI 100, ¶18, 293 Wis. 2d 594, 716 N.W.2d 906.   Whether a plea is knowing, intelligent, and voluntary is a question of constitutional fact.  *Id.*, ¶19.  We accept the circuit court's findings of historical and evidentiary fact unless they are clearly erroneous, but we determine independently whether those facts demonstrate that the defendant's plea was knowing, intelligent, and voluntary.  *Id.*

¶12     Where, as here, a defendant moves to withdraw his or her plea based on an alleged error in the plea colloquy, the defendant must: (1) make a prima facie showing of a violation of WIS. STAT. § 971.08 or another court-mandated duty; and (2) allege that he or she did not, in fact, know or understand the information that should have been provided during the plea colloquy.  *State v. Bangert*, 131 Wis. 2d 246, 274, 389 N.W.2d 12 (1986).  If the defendant satisfies these obligations, the burden shifts to the State to prove by clear and convincing evidence that the defendant's plea was knowing, intelligent, and voluntary despite the inadequacy of the plea colloquy.  *Id.*  The State may utilize any evidence in the record "to show that the defendant in fact possessed the constitutionally required understanding and knowledge which the defendant alleges the inadequate plea colloquy failed to afford him [or her]."  *Id.* at 274-75.

¶13     Citing *State v. Sulla*, 2016 WI 46, 369 Wis. 2d 225, 880 N.W.2d 659, Peterson first contends the circuit court was required to inform him at the plea hearing that the read-in offenses could be used to increase his sentence up to the maximum possible penalty.  Peterson, however, has misinterpreted *Sulla*.  There, as relevant to this appeal, our supreme court held that the circuit court

"should" advise a defendant that the read-in charge will be considered by the sentencing court, but the maximum penalty will not be increased. *Id.*, ¶35. Such an advisement, however, is not mandatory. *See also* **State v. Straszkowski**, 2008 WI 65, ¶93, 310 Wis. 2d 259, 750 N.W.2d 835 (discussing the better practice of informing defendants about the implications of a read-in offense, but never declaring that a court is required to do so).

¶14     In any event, Peterson signed a plea questionnaire form that described the possible effects of read-in offenses, thereby acknowledging his understanding that: (1) although the judge may consider read-in charges when imposing the sentence, the maximum penalty will not be increased; (2) he may be required to pay restitution on any read-in charges; and (3) the State may not prosecute him for any read-in charges. To the extent Peterson nevertheless asserts he did not know the read-in offenses could be considered to increase his sentence up to the maximum, his claimed lack of understanding does not entitle him to relief because the circuit court was only required to advise Peterson of direct consequences of his plea. *See* **State v. James**, 176 Wis. 2d 230, 238, 500 N.W.2d 345 (Ct. App. 1993). There is no requirement that a defendant entering a plea be informed of indirect or "collateral" consequences of conviction. *Id.*

¶15     "A direct consequence of a plea is one that has a definite, immediate, and largely automatic effect on the range of a defendant's punishment." **State v. Byrge**, 2000 WI 101, ¶60, 237 Wis. 2d 197, 614 N.W.2d 477. In contrast, a collateral consequence is indirect, does not automatically flow from the conviction, and may depend on the subsequent conduct of a defendant. *Id.*, ¶61. If the circuit court fails to disclose a direct consequence of a plea, a defendant may withdraw the plea as a matter of right. **State v. Merten**, 2003 WI App 171, ¶7, 266 Wis. 2d 588, 668 N.W.2d 750. However, if the court does not disclose a collateral

consequence of a plea, a defendant may not withdraw his or her plea on the basis of that lack of information. *Id.*

¶16    The potential impact of a read-in offense at sentencing is a collateral consequence of the plea because the circuit court maintains discretion in determining how or if it will use a read-in offense. The mere possibility that the court may consider a read-in offense at sentencing does not create a definite, immediate, and largely automatic effect on the range of a defendant's punishment. We likewise reject Peterson's assertion that the court was required to inform him that he may be required to pay restitution on the read-in charges. Because the decision whether restitution will be ordered and in what amount is left to the circuit court's discretion, *see* ***State v. Madlock***, 230 Wis. 2d 324, 329, 602 N.W.2d 104 (Ct. App. 1999), the chance a defendant may be required to pay restitution on read-in charges does not establish a definite, immediate and automatic effect on the sentence. The court, therefore, had no mandatory duty to inform Peterson of the effects of the read-in offenses.

¶17    Next, Peterson argues the circuit court was required to inform him that it could order no contact with Peterson's biological daughter. Peterson asserts that such a restriction is punishment constituting a direct consequence of his plea. As an initial matter, we note that the court did inform Peterson that a no-contact order was possible. Specifically, when ascertaining Peterson's understanding of the plea agreement, the court stated: "It's going to entail no contacts. It's going to—And I would say no contacts certainly with [the victim] my guess would be." The court added it "assume[d] that it also [was] going to include no contacts with minor children. Something like that." The court ultimately ordered that Peterson have no contact with minors, but it specifically exempted Peterson's biological daughter from that order, noting he could have contact at his daughter's request

and with the approval of the Department of Corrections. We therefore conclude the court did inform Peterson that it could order he have no contact with his biological daughter.

¶18 In addition, to the extent Peterson is asserting that any limitation on contact with his daughter is punishment, the State acknowledges that a circuit court has a mandatory duty to inform a defendant of any potential punishment. *See* WIS. STAT. § 971.08(1). However, the question remains whether the limited contact order in this case constitutes punishment. Whether such a limitation is punishment is determined by the intent-effects test. *See **State v. Muldrow***, 2018 WI 52, ¶35, 381 Wis. 2d 492, 912 N.W.2d 74. Under that test, the threshold question is whether the challenged limitation is a form of punishment or a non-punitive, regulatory scheme. *See **State v. Rachel***, 2002 WI 81, ¶18, 254 Wis. 2d 215, 647 N.W.2d 762.

¶19 First, the court looks to whether the express or implicit "intention of the legislature was to impose punishment." ***Smith v. Doe***, 538 U.S. 84, 92 (2003). If the legislature intended to impose punishment, the inquiry ends. ***Id.*** However, if the legislature did not intend to impose punishment, the second inquiry is whether the law should nonetheless be deemed punishment based on its effect. ***Id.*** This showing requires the "clearest proof" that the law is not what it purports to be. ***Id.***

¶20 The second inquiry involves the consideration of seven factors: (1) whether the limitation involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—i.e., retribution and deterrence; (5) whether the

behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. *Muldrow*, 381 Wis. 2d 492, ¶31.

¶21 Here, Peterson's biological daughter was a witness, as she confirmed that Peterson was in the victim's bedroom on the night of his arrest. WISCONSIN STAT. § 973.049 applies to restrictions placed on contacting a victim, witness, or co-actor, and it specifically states that the prohibition on contact of a witness is permitted if it is "in the interest of public protection." The stated intent of the statute, therefore, is not punitive; it is designed for the protection of others, not to punish the offender. We therefore turn to above-referenced factors to determine whether the statute nevertheless has a punitive effect.

¶22 First, the limitation on contact with Peterson's daughter is not an affirmative disability or restraint. Under ex post facto cases, if the effect on a defendant is a minor or indirect disability or restraint, its effect is unlikely to be punitive. *Smith*, 538 U.S. at 99-100. The punishment of imprisonment is "the paradigmatic affirmative disability or restraint." *Id.* at 100. Any disability or restraint imposed by the limited contact order in this case is very minor when compared to the restraint of imprisonment. Thus, the first factor does not support a finding of punitive effects.

¶23 Second, an order limiting contact is not a traditional form of punishment. Third, the imposition of such an order is not reliant on an independent scienter element. Fourth, the limited contact order here does not serve to promote the traditional aims of punishment (retribution and deterrence). Rather, it is concerned with public protection. While the State concedes it may

10

have some deterrent effect on future crimes, that is not dispositive, as "[a]ny number of governmental programs might deter crime without imposing punishment." *Smith*, 538 U.S. at 102.

¶24 Fifth, while the violation of a limited contact order may result in punishment, the behavior of simply being in contact with someone is not necessarily a criminal act. Thus, while there is a potential punishment associated with violating the subject order, that does not render the order itself punishment.

¶25 Sixth, the limited contact order at issue in this case has a rational connection to a non-punitive purpose—namely, protection of a victim or witness against intimidation or further victimization. *Id.* Because there is a rational connection between the limited contact order and the need for protection of victims and witnesses, the statute does not have a punitive effect.

¶26 Finally, the limited contact order is not excessive with respect to its non-punitive purpose. This particular factor concerns "whether the regulatory means chosen are reasonable in light of the non-punitive objective." *Id.* at 105. When it comes to orders restricting contact, such an order is not automatic. Rather, the circuit court has discretion in determining whether and how such restrictions will be imposed if the court determines that the restriction "would be in the interest of public protection." WIS. STAT. § 973.049(2); *see also* ***State v. Campbell***, 2011 WI App 18, ¶23, 331 Wis. 2d 91, 794 N.W.2d 276. Here, the limited contact order provided Peterson with the ability to have contact with his daughter in a reasonable way, given the nature of the offenses. The restrictions imposed by the limited contact order were reasonably necessary for the protection of Peterson's daughter. Under the intents-effects test, Peterson has not met his burden to show "by the clearest proof" that the order limiting his contact with his

biological daughter has a punitive effect or otherwise constitutes criminal punishment. *See Smith*, 538 U.S. at 92. Thus, the court was not required to inform Peterson during the plea hearing that it could impose limitations on contact with his daughter.

¶27 To the extent Peterson alternatively attempts to characterize the limited contact order as a "waiver" of his constitutional right to contact his daughter, we are not persuaded. Citing *Oneida County Department of Social Services v. Therese S.*, 2008 WI App 159, 314 Wis. 2d 493, 762 N.W.2d 122, Peterson asserts that a parent must have knowledge of the constitutional rights given up by a plea. *Therese S.*, however, is distinguishable on its facts, as it involved a plea to the grounds for termination of an individual's parental rights. The discussion in that case is therefore inapplicable to the pleas entered in this criminal matter.

¶28 In any event, Peterson did not waive any right to contact his daughter but, rather, voluntarily entered a plea with knowledge that the circuit court could impose a no-contact condition. Because the court had no mandatory duty to either explain the impact of the read-in charges or inform Peterson that it could limit contact with his daughter, the court properly denied Peterson's motion for plea withdrawal without an evidentiary hearing. *See Nelson v. State*, 54 Wis. 2d 489, 497-98, 195 N.W.2d 629 (1972) (no hearing required when defendant presents only conclusory allegations or when record conclusively demonstrates that he or she is not entitled to relief).

¶29 Next, Peterson argues the circuit court erred by denying his motion for sentence modification. A circuit court has inherent authority to modify criminal sentences in certain limited circumstances. *State v. Harbor*, 2011 WI 28,

¶35, 333 Wis. 2d 53, 797 N.W.2d 828. One such circumstance is when a new factor warrants modification. *Id.* Even where no new factor is presented, a circuit court has authority to modify a sentence when the court determines that the sentence is illegal or void, or when the court determines that the sentence is unduly harsh or unconscionable. *Id.*, ¶35 n.8. A court also has authority to vacate a sentence and resentence the defendant if the court relied on inaccurate information when originally sentencing the defendant. *State v. Tiepelman*, 2006 WI 66, ¶31, 291 Wis. 2d 179, 717 N.W.2d 1.

¶30    Here, Peterson does not argue there is a new factor warranting sentence modification, nor does he claim his sentence is illegal, void, unduly harsh, or unconscionable. Instead, he argues his sentence was based on "inaccurate information." Peterson, however, identifies no inaccurate information considered by the circuit court at sentencing. Rather, he argues the court erred by rejecting Dickey's assessment that the crimes were not motivated by pedophilic interest and by expressing its belief that the five-year sentence recommended by defense counsel would not be sufficient given the harm caused to the victim. Thus, Peterson's actual complaint is with how the court exercised its discretion in weighing sentencing factors, and he specifically asserts on appeal that the sentencing court "abused its discretion."

¶31    A challenge to the circuit court's sentencing discretion, however, cannot be raised in a WIS. STAT. § 974.06 postconviction motion. *Smith v. State*, 85 Wis. 2d 650, 661, 271 N.W.2d 20 (1978). "[P]ostconviction review under sec. 974.06 is applicable only to jurisdictional or constitutional matters or to errors that go directly to the issue of the defendant's guilt." *Id.* Because none of Peterson's arguments are "jurisdictional or constitutional," they cannot be raised in a

13

§ 974.06 motion. The court, therefore, properly denied his motion for sentence modification.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.