DUGAN, J.
*777 ¶1 James J. Kaufman, pro se , appeals an order dismissing his action challenging the constitutionality of the statute requiring global positioning system (GPS) tracking for sex offenders. In *778 essence, Kaufman contends that (1) the State's GPS tracking violates the Ex Post Facto Clause because it retroactively imposes lifetime GPS monitoring upon sex offenders, (2) the GPS tracking violates his Fourth Amendment rights,[1] and (3) he was entitled to a particularized due process determination before the State could impose the GPS tracking upon him. We disagree and, therefore, affirm the trial court's order.
¶2 We provide limited factual and statutory background and we will refer to additional relevant facts in our discussion.
*196 BACKGROUND
¶3 Kaufman states he committed the following sexual offenses: "[H]e masturbated an 11-year-old *779 boy for 30-seconds; he performed oral sex on a 17-year-old boy while videotaping that act; and he possessed one CD-ROM of what 'appeared to be' (according to police reports) nude teenage males." Although the record contains some conflicting dates, the complaints indicate the offenses were committed in mid-1997 and early 1998.[2]
¶4 In November 1997, Kaufman pled guilty to the first of three child sex crimes, felony first-degree sexual assault of a child. Kaufman had fondled an eleven-year-old boy. Two additional charges for soliciting a child for prostitution were dismissed but read in to the record. The criminal complaint alleged that Kaufman paid $3.85 to a boy as an enticement to allow Kaufman to fondle him. It also alleged that Kaufman had offered money to other neighborhood children, but that they had refused his sexual advances.
¶5 Before his sentence was imposed, Kaufman was charged with committing two more child sex crimes. Kaufman once again paid a child to allow Kaufman to perform a sex act. This time, Kaufman also videotaped the encounter. Kaufman pled guilty to both felony sexual exploitation of a child and felony possession of child pornography. Witness statements indicate that Kaufman paid around $300 to $500 to videotape himself performing oral sex on his cousin's boyfriend while the cousin watched. Both children agreed to Kaufman's advances because they had run away from home and needed money.
¶6 The trial court sentenced Kaufman for these sex crimes in June 1998. For the child sexual exploitation and possession of child pornography charges, *780 Kaufman received nine years in prison. The court also imposed a withheld sentence for the first-degree sexual assault of a child charge, with twenty years of probation that began on his release from prison.
¶7 Kaufman was released on probation in June 2007. In December 2007, the Department of Corrections (DOC) found that Kaufman was violating his probation by creating a MySpace social media account, viewing pornography, and accessing the internet, which he was not permitted to use except for employment purposes. Pictures of underage males were also located during a search of his residence.
¶8 Rather than revoke Kaufman's probation, DOC allowed Kaufman to participate in an inpatient sex offender treatment program at Racine Correctional Institution (RCI). After completing the program, Kaufman was released on July 2, 2008.
¶9 Within days of his release, Kaufman violated the conditions of his release by possessing pornographic pictures, possessing a computer modem, and accessing the internet without prior agent approval. Kaufman also had a collection of sexually explicit stories about adults having sexual intercourse with underage males. DOC was alerted to the violations after RCI officials intercepted several large envelopes with pornography, including the sexually explicit stories that Kaufman had mailed to another child sex offender at RCI.
¶10 DOC recommended revocation of Kaufman's probation. His probation was revoked by an administrative law judge, who concluded that Kaufman "was and remains a serious threat to children." The revocation was upheld on appeal.
¶11 On March 30, 2009, Kaufman returned to the trial court and was sentenced *197 to nine years of *781 prison on the first-degree sexual assault charge. At sentencing, the trial court stated that it found it especially troubling that Kaufman had violated the conditions of his probation so soon after completing his sex offender treatment program, commenting that:
the most concerning thing about it to me, sir, is ... you did it within weeks of being released from the most significant and beneficial treatment you'd had in the past ten years, where you learned the most and understood the most about your criminal activity and should have had the best opportunity to prevent any further victims.
The nine-year sentence was subsequently reduced to eight years.
¶12 Kaufman was granted parole in May 2013. His multiple sex crime convictions triggered the statutory requirement for GPS location tracking. Since Kaufman's May 2013 release, he has been required to wear a GPS tracking anklet that allows DOC to track his whereabouts. Kaufman's parole ended in January 2016.
¶13 In April 2015, Kaufman filed a pro se action for declaratory judgment and injunctive relief. In December 2016, the trial court issued an order denying Kaufman's motion for declaratory judgment. This appeal followed.
DISCUSSION
¶14 WISCONSIN STAT. § 301.48 (2015-16)[3] creates a scheme of DOC-administered GPS tracking for specific types of released sex offenders. It requires DOC to *782 monitor offenders released from prison who have committed sex crimes against children and those who have committed multiple sex crimes. Secs. 301.48(2)(a)l.-8. Offenders who are subject to GPS tracking must wear a device that tracks their physical location at all times. Sec. 301.48(3). The GPS tracking requirement typically lasts for life, but offenders may petition a circuit court to terminate tracking after twenty years. Secs. 301.48(2)(a), 301.48(6). DOC may also petition to end lifetime tracking of permanently physically incapacitated offenders. Sec. 301.48(7). GPS tracking also is terminated if the offender moves out of Wisconsin, but it resumes if the offender returns. Sec. 301.48(7m). The statute does not empower DOC to enter offenders' homes, take offenders into custody, or request that law enforcement enter their homes. See generally sec. 301.48. Moreover, DOC officials normally review an offender's location data at the end of each day, not in real time.
¶15 In addressing Kaufman's constitutional challenges to the sex offender GPS tracking requirement, we apply the following standard of review.
I. The Standard of Review
¶16 "The constitutionality of a statute is a question of law, which this court determines independently of ... the [trial] court ... but still benefitting from [its] analys[is]." See State v. Smith , 2010 WI 16, ¶8, 323 Wis. 2d 377, 780 N.W.2d 90. Like all statutes, WIS. STAT. § 301.48 is presumed constitutional. See Blake v. Jossart , 2016 WI 57, ¶27, 370 Wis. 2d 1, 884 N.W.2d 484. "[I]f any doubt exists about the statute's constitutionality, the court must resolve that doubt in favor of upholding the statute." Id. Merely establishing doubt *783 about a statute's constitutionality does not suffice, and " 'it is not enough to establish that a statute probably is unconstitutional.' " Id. (citation omitted). Instead, *198 Kaufman has the heavy burden to show that using GPS to track repeat sex offenders like himself is unconstitutional beyond a reasonable doubt. See League of Women Voters of Wis. Educ. Network, Inc. v. Walker , 2014 WI 97, ¶17, 357 Wis. 2d 360, 851 N.W.2d 302.
II. The Sex Offender GPS Tracking Requirement is Not Punishment and, Therefore, It Does Not Violate the Ex Post Facto Clause
¶17 In asserting that the GPS tracking requirement violates the Ex Post Facto Clause and its counterpart in the Wisconsin Constitution,[4] Kaufman asserts that although the legislature's stated intent was regulatory rather than punitive, the actual intent is punitive. While the State agrees that WIS. STAT. § 301.48 has a retroactive effect on Kaufman, it asserts that the trial court's determination that the statute does not violate the Ex Post Facto Clause should be affirmed, based on this court's holding in State v. Muldrow , 2017 WI App 47, ¶23, 377 Wis. 2d. 223, 900 N.W.2d 859, that the GPS tracking requirement does not constitute punishment.[5]
*784 ¶18 A statute is an ex post facto law only if it imposes punishment. Smith v. Doe , 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). In making that determination, the court must first determine whether the legislature intended to impose punishment. Id. If the answer is "yes," that ends the inquiry. Id. If, however, the legislature intended to enact a regulatory scheme that is civil and non-punitive, the court must further examine whether the statutory scheme is " 'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.' " Id. (citation and one set of quotation marks omitted). " '[O]nly the clearest proof' " will transform what the legislature has denominated a civil remedy into a criminal penalty. Id. (citation and one set of quotation marks omitted).
¶19 This court issued Muldrow on June 21, 2017, after Kaufman filed his initial brief. The State filed its response brief in October 2017, relying on Muldrow . Kaufman did not file any reply brief. Thus, he is deemed to have conceded that Muldrow is controlling on his ex post facto challenge to WIS. STAT. § 301.48. See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp. , 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).
¶20 Moreover, the Wisconsin Supreme Court recently issued a decision affirming Muldrow . See State v. Muldrow , 2018 WI 52, ¶¶8, 63, 381 Wis. 2d 492, 912 N.W.2d 74. The court applied the intent-effects test initially articulated in *785 Kennedy v. Mendoza-Martinez , 372 U.S. 144, 168-70, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). See Muldrow , 381 Wis. 2d 492, ¶30, 912 N.W.2d 74. Consistent with the intent-effects test, the court began by examining the intent of WIS. STAT. § 301.48. See Muldrow , 381 Wis. 2d 492, ¶¶37-48, 912 N.W.2d 74. The court concluded that "the intent of lifetime GPS tracking centers *199 more closely around the protection of the public than it does punishment of the offender." Id ., ¶48. The court then considered whether the effect of the lifetime GPS requirement was punitive applying seven non-exclusive factors set forth in Mendoza-Martinez , 372 U.S. at 168, 83 S.Ct. 554, and held that the effect of lifetime GPS tracking is not punitive. Muldrow , 381 Wis. 2d 492, ¶¶50-61, 912 N.W.2d 74. In sum, the court determined that "neither the intent nor the effect of the lifetime GPS tracking is punitive." Id ., ¶63.[6]
¶21 The recent Muldrow decision is controlling law on the issue of whether WIS. STAT. § 301.48 is punitive. See Cook v. Cook , 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997). Further, a law can only be an ex post facto law if it imposes punishment. See Smith , 538 U.S. at 92, 123 S.Ct. 1140. Thus, the Wisconsin Supreme Court's holding that § 301.48 is not punitive is dispositive of Kaufman's ex post facto claim. See Muldrow , 381 Wis. 2d 492, ¶12, 912 N.W.2d 74 (stating that "[t]he threshold question for ex post facto violations is the same as the *786 threshold question in the present case"). The next issue we address is Kaufman's Fourth Amendment challenge.
III. The Sex Offender GPS Tracking Requirement is a Reasonable Search and, Therefore, Does Not Violate the Fourth Amendment
¶22 Kaufman contends that the GPS tracking requirement violates the Fourth Amendment and its counterpart in the Wisconsin Constitution, article I, section 11,[7] because it does not satisfy the requirements of a "special needs" search and it does not require an individualized determination of a person's risk of reoffending. Using Grady v. North Carolina as a framework, the State argues that although the GPS tracking requirement is a search, it is reasonable under "the totality of the circumstances" and under the "special needs" doctrine. See id. , --- U.S. ----, 135 S.Ct. 1368, 1370-71, 191 L.Ed.2d 459 (2015).
¶23 In Grady , the United States Supreme Court held that a search occurs when a convicted recidivist sex offender who has completed his sentence is required to attach a monitoring device to his body to track his movements. Id . at 1369-70. However, it held that if reasonable, the search would still be constitutional and that the reasonableness of the search depended upon the "totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." Id . at 1371. As support, the *787 court cited Samson v. California , 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006), which held that under the totality of the circumstances a suspicionless search of parolee was reasonable, and Vernonia School District 47J v. Acton , 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995), which held that under the special needs doctrine, random drug testing of student *200 athletes was reasonable. See Grady , 135 S.Ct. at 1371. The court remanded the case to the state court for a determination of the search's reasonableness. Id.
¶24 In Grady 's wake, the court in Belleau analyzed the Wisconsin GPS tracking law as applied to a repeat sex offender who was no longer under supervision. Belleau v. Wall , 811 F.3d 929, 930-31 (7th Cir. 2016). After considering the totality of the circumstances, the court concluded that the reasonableness standard was satisfied. See id. at 932, 937. The concurrence relied upon the special needs doctrine to justify the reasonableness of the search. See id . at 940-41 (Flaum, J., concurring).
¶25 This court concludes that both the totality of the circumstances test and the special needs doctrine used in Belleau are helpful and the conclusions are persuasive.
A. The Sex Offender GPS Tracking Requirement is Reasonable under the Fourth Amendment "Totality of the Circumstances" Test
¶26 Belleau describes the anklet monitor worn by Wisconsin repeat sex offenders subject to GPS tracking:
The GPS ankle bracelet ... determines the geographical location of the person wearing it, within an error range of no more than 30 meters....
*788 The type of anklet worn by the plaintiff is waterproof to a depth of fifteen feet, so one can bathe or shower while wearing it. It must however be plugged into a wall outlet for an hour each day (while being worn) in order to recharge it. There are no restrictions on where the person wearing the anklet can travel, as long as he has access to an electrical outlet. Should he move away from Wisconsin, he ceases having to wear it....
When the ankleted person is wearing trousers the anklet is visible only if he sits down and his trousers hike up several inches and as a result no longer cover it.
Id. at 931-32. Belleau further explains how the information obtained from the tracking is accessed:
[E]very night the Department of Corrections makes a map of every anklet wearer's whereabouts that day so that should he be present at a place where a sex crime has been committed, or be hanging around school playgrounds or otherwise showing an abnormal interest in children not his own, the police will be alerted to the need to conduct an investigation.
Id . at 935.
¶27 The record in this case also establishes that the device, which has no audio or sound, records no information about what the wearer is doing. It does not restrict Kaufman's movements or ban him from being anywhere. DOC does not track Kaufman in real time; instead the location is recorded for retroactive review if necessary. DOC does not make in-person home visits to persons on GPS tracking.
¶28 Even with the tracking, Kaufman has engaged in normal life activities since his supervised release ended. He lives with his step-grandmother, holds two part-time jobs, and works every day. He goes *789 bicycling, hiking, and out to eat with friends. He and his step-grandmother go on road trips in Wisconsin, which do not require any special planning because of the monitor; he and his step-grandmother "can just leave the house and go around." Kaufman acknowledges that he "can go anywhere [he] want[s]" and that "it's not going to stop [him] from going through a door or getting in a car and driving."
¶29 At one point, DOC officials had Kaufman's device removed in order to allow him to travel to Ireland because he *201 intended to move there. However, Irish immigration officials refused Kaufman admission to Ireland because of his Wisconsin convictions. Kaufman tries to wear long pants at home and in public to cover the monitor. He identified a single incident when he felt embarrassed while wearing the monitor in public and wading in a river wearing shorts. He saw people pointing to him and whispering, but he does not know what they were talking about.
¶30 In Samson , the court applied the totality of the circumstances test and upheld a California statute that permitted a police officer to perform suspicionless searches of parolees. See id. , 547 U.S. at 857, 126 S.Ct. 2193. The court stated that deciding whether a search is reasonable " 'is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.' " Id. at 848, 126 S.Ct. 2193 (citation omitted).
¶31 We first apply the totality of the circumstances test to the GPS tracking system. We begin by observing that repeat sex offenders have diminished privacy expectations. Belleau notes that convicted sex offenders in Wisconsin-even those no longer on parole *790 or probation-are already subject to sex offender registry requirements. See id. , 811 F.3d at 934-35. Additionally, Wisconsin's online public registry contains a sex offender's criminal history, along with his or her home address. See WIS. STAT. § 301.45(2). Belleau concluded that "persons convicted of crimes, especially very serious crimes such as sexual offenses against minors, and especially very serious crimes that have high rates of recidivism such as sex crimes, have a diminished reasonable constitutionally protected expectation of privacy." See id. , 811 F.3d at 936.
¶32 The principle applies in this case. All of Kaufman's sex offenses involved minors, he is already listed on the Wisconsin sex offender registry, and, as a consequence, he has a diminished expectation of privacy. See id. The main objective of the mapping in this case is to deter future offenses by making sex offenders like Kaufman aware of the ongoing monitoring and the likelihood of apprehension if a sex crime is reported at a time and location at which the offender was present. See id.
¶33 Kaufman argues that his period of parole has ended and, therefore, he no longer has diminished expectations of privacy. However, as noted in Belleau :
[T]he plaintiff[']s privacy has already been severely curtailed as a result of his criminal activities, and he makes no challenge to that loss of privacy. The additional loss from the fact that occasionally his trouser leg hitches up and reveals an anklet monitor that may cause someone who spots it to guess that this is a person who has committed a sex crime must be slight.
See id . at 935. We agree that the incremental loss of privacy for a convicted repeat sex offender, such as Kaufman, is minimal.
*791 ¶34 In contrast to the loss of privacy, WIS. STAT. § 301.48 serves the strong government interest in deterring repeat child sex offenders from sexually assaulting more children-the other Samson factor. Society recognizes the particularly heinous nature of sex crimes against children. Such assaults frequently inflict "lifelong psychological scars" on their victims. Belleau , 811 F.3d at 934.
¶35 The United States Supreme Court has recognized that "[s]ex offenders are a serious threat in this Nation" and that "the victims of sexual assault are most often *202 juveniles." McKune v. Lile , 536 U.S. 24, 32, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002). Sex offenders' recidivism rates further heighten the government interest at stake. For example, a United States Department of Justice study showed that "[c]ompared to non-sex offenders released from State prisons, released sex offenders were 4 times more likely to be rearrested for a sex crime." U.S. Dep't Justice, Bureau of Justice Statistics, Recidivism of Sex Offenders Released From Prison in 1994 , 1 (Nov. 2003). That study also found that "[r]eleased child molesters with more than 1 prior arrest for child molesting" had a 7.3% chance of being rearrested for child molesting. Id. at 1-2.
¶36 Moreover, statistics show that sex offender recidivism rates do not necessarily decrease significantly as offenders get older-a fact that supports the lifetime nature of Wisconsin's GPS tracking program. The Supreme Court thus concluded that "[t]he risk of recidivism posed by sex offenders is 'frightening and high.' " See Smith , 538 U.S. at 103, 123 S.Ct. 1140 (citation omitted). "When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." McKune , 536 U.S. at 33, 122 S.Ct. 2017. "States thus have a vital interest in *792 rehabilitating convicted sex offenders"-and, as a part of that interest, in deterring them from committing more sex crimes. Id.
¶37 Kaufman does not dispute these statistics. Indeed, he concedes that the United States Department of Justice study showed a 5.3% recidivism rate among released sex offenders. He, instead, asserts that this rate is not "high." However, Kaufman offers no legal authority stating that, under the Fourth Amendment's "totality of the circumstances" test, recidivism must exceed 5.3%.
¶38 We conclude that under the totality of the circumstances, given the diminished nature of Kaufman's privacy interest and Wisconsin's particularly strong interest in reducing recidivism through the information collected by the tracking device, the Wisconsin tracking requirement for convicted sex offenders is reasonable under the Fourth Amendment.
B. The Sex Offender GPS Tracking Requirement is Reasonable under the Fourth Amendment "Special Needs" Doctrine
¶39 The Fourth Amendment's "special needs" doctrine also applies to WIS. STAT. § 301.48. Wisconsin's GPS tracking program effectively serves the recognized "special needs" of deterring future crimes and gathering information needed to solve them. Wisconsin's interest in accomplishing these "special needs" in the context of sex crimes outweighs sex offenders' diminished privacy expectations.
¶40 As previously noted, in Grady , the Supreme Court cited Vernonia as another way to analyze *793 GPS tracking programs. Grady , 135 S.Ct. at 1371. Vernonia explains that "[a] search unsupported by probable cause can be constitutional ... 'when special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.' " See id. , 515 U.S. at 653, 115 S.Ct. 2386 (citation omitted). The "special needs" doctrine does not apply, however, if "the primary purpose of the ... program is to uncover evidence of ordinary criminal wrongdoing." City of Indianapolis v. Edmond , 531 U.S. 32, 41-42, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000). If a "special need" exists, the task is to "balance the governmental and privacy interests to assess the practicality of the warrant and probable-cause requirements in the particular context." *203 Skinner v. Railway Labor Execs.' Ass'n , 489 U.S. 602, 619, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989).
¶41 In Belleau , the concurrence relied upon the special needs doctrine to justify the reasonableness of the search.[8] See id ., 811 F.3d at 940-41 (Flaum, J., concurring). Addressing the State's interest in the GPS program, the concurrence stated that the special need that the Wisconsin GPS program is designed to serve is reducing recidivism by letting offenders know that they are being tracked and creating a repository of information that may assist in detecting or ruling out future sex offenses, and that these goals are not focused on obtaining evidence to investigate a particular crime. See id . at 940 (Flaum, J., concurring). The concurrence also states that the public interest can hardly be overstated because one of the State's fundamental interests is to protect the public, and that interest is particularly strong when the threat of criminal conduct is so obviously harmful to innocent *794 and defenseless juvenile victims. See id . (Flaum, J., concurring). Moreover, as succinctly stated by the concurrence,
Sex offenders who target children pose a uniquely disturbing threat to public safety. Their crimes are especially destructive and their rate of recidivism is particularly high. These sexual predators victimize children, who may suffer from trauma from the assault for the rest of their lives. The nature of these offenses, thus, places the state's interest in combating these particular sex offenses beyond that of general crime control.
Id. at 938 (Flaum, J., concurring).
¶42 In the special needs doctrine analysis that State interest is then balanced, in this case, against the privacy interest of those subject to the GPS monitoring program-persons convicted of sex crimes against children. See Skinner , 489 U.S. at 619, 109 S.Ct. 1402. As noted by the majority opinion in Belleau , "persons convicted of crimes, especially very serious crimes such as sexual offenses against minors, and especially very serious crimes that have high rates of recidivism such as sex crimes, have a diminished reasonable constitutionally protected expectation of privacy." See id. , 811 F.3d at 936 (emphasis omitted). The concurrence also noted a convicted sex offender has a "diminished expectation of privacy." See id. at 940 (Flaum, J., concurring). We agree that the State's interest in the GPS monitoring of convicted child sex offenders is paramount to the sex offender's privacy interest.
¶43 Continuing its special needs analysis, the concurrence in Belleau , noted that the special needs balancing inquiry is context specific and stated that:
*795 Therefore, this inquiry must be sensitive to the particular purpose for which the program is designed in assessing whether the traditional safeguards of probable cause and a warrant should apply. Here, the program is designed to prevent and possibly solve sex offenses in the future. In this scenario, there is no specific crime to give rise to probable cause, or even reasonable suspicion. Accordingly, the traditional safeguards of the Fourth Amendment, such as the warrant requirement, are unworkable.
Given the practical constraints to accomplishing the state's purposes, this program is relatively limited in its scope. Police do not administer the program, or even access the GPS data unless they have some reason to specifically request it. Even the Department of Corrections does not review Belleau's location in real-time, but only at the end of each *204 day. Additionally, the program is narrowly designed only to track Belleau's location. It does not infringe on Belleau's freedom of movement. Other than wearing the GPS device at all times and charging it as needed, Belleau may go where he pleases, when he pleases. In fact, Belleau may even leave Wisconsin, at which point his GPS monitoring will terminate.
Therefore, despite the constitutional magnitude of the privacy interest at stake, the monitoring scheme constitutes a reasonable special needs search.
Id. at 941.
¶44 We adopt the concurrence's analysis because we find it persuasive. Based on that analysis we conclude that in light of the State's special need to protect children from sex offenders, the GPS's relatively limited scope, and Kaufman's diminished expectation to privacy, the GPS monitoring program constitutes a reasonable special needs search. For that *796 additional reason, the search does not violate the Fourth Amendment. See Grady , 135 S.Ct. at 1371.
IV. No Additional Due Process Protection is Required Prior to Implementing the GPS Tracking System
¶45 Kaufman also argues that Grady requires an individualized determination as to whether it is reasonable to apply GPS tracking to a specific offender. Kaufman makes this conclusory assertion without identifying any supporting portion of Grady . We could summarily reject the contention on this ground alone. Pettit , 171 Wis. 2d at 646-47, 492 N.W.2d 633.
¶46 However, to be complete, we also briefly address this issue, adding that we concur with the trial court's reliance on Connecticut Department of Public Safety v. Doe , 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003), in rejecting this contention.
¶47 WISCONSIN STAT. § 301.48 conditions GPS tracking on Kaufman's prior convictions, rather than his current dangerousness. Therefore, due process does not entitle him to more procedural protections. The United States Supreme Court's decision in Connecticut supports this analysis. There, the Court held that sex offenders subject to Connecticut's registration law were not entitled to a hearing on their dangerousness. See Connecticut , 538 U.S. at 7-8, 123 S.Ct. 1160. The only fact that mattered under the Connecticut registry law was the offender's prior conviction; therefore, due process was satisfied by his trial, a procedurally safeguarded chance to contest that conviction. See id. at 7, 123 S.Ct. 1160. By contrast, the fact the offender hoped to prove, that he was no longer dangerous, was "of no consequence" to *797 his registry requirement. See id. Therefore, Kaufman was not entitled to a hearing to prove that he was not dangerous because his current state of dangerousness was immaterial to being subject to GPS monitoring.
¶48 WISCONSIN STAT. § 301.48 operates in the same manner as the registry law upheld in Connecticut . The law did not require DOC to prove that Kaufman was dangerous before subjecting him to GPS tracking. Instead, the law subjected Kaufman to GPS tracking due to his prior repeated child sex crime convictions, which Kaufman had the chance to contest in those criminal proceedings. Similar to Connecticut , due process does not entitle Kaufman to contest his current dangerousness, since that fact is immaterial to whether § 301.48 subjects him to GPS tracking. See Werner v. Larrabee , No. 15-cv-104-pp, 2017 WL 570796, at *3 (E.D. Wis. Feb. 13, 2017) ("The consequence (the GPS monitoring) flows from the conviction *205 or commitment, and there is no requirement for additional due process.").
¶49 Additionally, Kaufman mistakenly argues that since some sex offenders receive civil commitment hearings under WIS. STAT. ch. 980, he is entitled to one, too. This is the same mistake that the plaintiff made in Connecticut -the facts material to civil commitment are immaterial to GPS tracking. An offender is subject to civil commitment if "he or she suffers from a mental disorder that makes it likely that the person will engage in one or more acts of sexual violence." See WIS. STAT. §§ 980.01(7), 980.06. A trial is needed to determine that fact. WIS. STAT. § 980.05. However, offenders qualify for GPS tracking under WIS. STAT. § 301.48 based on their past convictions, not their current dangerousness.
*798 ¶50 The recidivism risk posed by sex offenders creates the need for both offender registries and GPS tracking. Wisconsin's legislature has reasonably decided to subject sex offenders to registration requirements and GPS tracking by virtue of their convictions, alone-due process does not require an additional showing of a particular offender's dangerousness. The trial court properly rejected Kaufman's due process challenge based on Connecticut .
CONCLUSION
¶51 Kaufman has failed to meet the heavy burden of establishing beyond a reasonable doubt that WIS. STAT. § 301.48 violates the Ex Post Facto Clause, the Fourth Amendment, or due process. Therefore, we affirm the trial court's order.
By the Court. -Order affirmed.

Kaufman also states that the "statute violates a multitude of his constitutional rights including but not limited to his rights" under the First and Fifth Amendments. The State notes that Kaufman also alleged a First Amendment violation but that he waived it by failing to develop it in the trial court or in his appeal brief. Kaufman has not filed a reply brief and, thus, is deemed to have conceded the point. See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp. , 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (stating that failure to refute an argument constitutes a concession).
Moreover, Kaufman's broad assertion regarding the violation of a multitude of his constitutional rights including the Fifth Amendment is not developed. Kaufman also includes a section in his brief regarding the financial costs imposed on those who are subject to GPS tracking, stating that they would impose a significant burden. Because these arguments are not developed, we decline to address them. See State v. Pettit , 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). In addition to being undeveloped, Kaufman's financial costs argument was not raised below, and thus he forfeited that argument on appeal. See State v. Ndina , 2009 WI 21, ¶¶29-31, 315 Wis. 2d 653, 761 N.W.2d 612 (failure to timely raise argument forfeits the argument on appeal).

Kaufman states that he committed the offenses in July 1997.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The Ex Post Facto Clause of the United States Constitution applicable to the states is found in Article I, Section 10, Clause I. Section 10 provides: "No state shall ... pass any ... ex post facto Law[.]" Article I, section 12 of Wisconsin Constitution provides, as relevant: "[n]o ... ex post facto law ... shall ever be passed[.]"

After the State filed its brief, the Wisconsin Supreme Court granted review. See State v. Muldrow , 2017 WI App 47, ¶23, 377 Wis. 2d. 223, 900 N.W.2d 859, review granted , 2017 WI 94, 378 Wis. 2d 222, 904 N.W.2d 371. Thereafter, Wisconsin Supreme Court issued a decision in the case that affirmed our decision. See State v. Muldrow , 2018 WI 52, ¶¶8, 63, 381 Wis. 2d 492, 912 N.W.2d 74.

We also note, although the Wisconsin Supreme Court's Muldrow decision did not address an ex post facto issue, Belleau v. Wall , 811 F.3d 929, 937-38 (7th Cir. 2016) examined the Wisconsin lifetime GPS tracking scheme for an ex post facto violation and determined that it was not punitive under the intent-effects test and, therefore, did not violate the Ex Post Facto Clause. Muldrow relied in part on Belleau 's "persuasive" intent-effect analysis in concluding that the law is not punitive, though stating that it was not, of course, bound by that decision. See Muldrow , 381 Wis. 2d 492, ¶¶36, 50, 59, 912 N.W.2d 74.

The provisions are substantively identical, and we interpret the Wisconsin provision consistently with the Fourth Amendment. State v. Richter , 2000 WI 58, ¶27, 235 Wis. 2d 524, 612 N.W.2d 29.

We note that the concurring opinion is not precedential. Rather we adopt its analysis on the special needs doctrine because we find it persuasive.